IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

GUADALUPE GUTIERREZ, SR.,

      Plaintiff,

  v.

KAISER FOUNDATION HOSPITALS, INC.
et al.,

      Defendants.

_____/

No. C 11-3428 CW

ORDER GRANTING
DEFENDANTS' MOTION
FOR SUMMARY
JUDGMENT (DOCKET
NO. 47)

Plaintiff Guadalupe Gutierrez, Sr. brings suit against
Defendants Carlos Avila and Kaiser Foundation Hospitals, Inc. for
hostile work environment, harassment, and retaliation under the
California Fair Employment and Housing Act (FEHA), Cal. Gov't Code
§ 12940.  In addition, Gutierrez alleges wrongful termination,
intentional infliction of emotional distress, unfair business
practices, retaliation under California Labor Code section 1102.5,
and breach of the implied covenant of good faith and fair dealing.
Defendants move for summary judgment on all claims.  Plaintiff
opposes the motion.  Having considered all of the parties'
submissions and oral argument, the Court grants the motion.

BACKGROUND

Gutierrez began his career at Kaiser as a laboratory
specialist in 1987.  Gutierrez Decl. ¶ 2.  He was promoted to
biomedical engineer in the mid '90s and promoted again to lead
biomedical engineer around 2005.  Gutierrez Dep. 21:23-22:1,
33:12-:17.  As a biomedical engineer, his work primarily involves

installing, maintaining, and repairing various types of medical equipment at Kaiser hospitals.  Avila Decl. ¶¶ 4-5.  For instance, Gutierrez services defibrillators, fetal monitors, anesthesia machines, ventilator machines, and various other pieces of equipment regularly used to diagnose and treat patients.  Id.; Gutierrez Decl. ¶¶ 2-3.

In July 2008, Kaiser hired Elias Flores, a forty year old biomedical engineer with about ten years of experience, to work with Gutierrez at Kaiser's Modesto Medical Center.  Gutierrez Decl. ¶ 4; Flores Decl. ¶ 6.  Starting in October 2008, Flores began to notice that Gutierrez was occasionally missing from the floor and his work cart was sometimes missing critical testing equipment.  Flores Decl. ¶ 7.  Flores also noticed that Gutierrez would sometimes enter information into the hospital's database indicating that he had performed tests on certain machines even though Flores had not seen Gutierrez near those machines.  Id. These incidents caused Flores to grow suspicious of Gutierrez's work and prompted him to review some of Gutierrez's reports in the hospital's database.  Id. ¶¶ 7-8.  Flores found that Gutierrez seemed to be entering reports with what Flores believed were "impossible readings."  Id.

In the spring of 2009, Flores expressed his concerns to Gutierrez and offered to show Gutierrez how to conduct proper tests of certain machines.  Id. ¶ 9.  When Gutierrez refused, Flores notified his immediate supervisor and, in early June 2009, conveyed his concerns to the regional head of their department, Carlos Avila.  Id. ¶¶ 10-11; Avila Decl. ¶ 8.

United States District Court
For the Northern District of California

2

**United States District Court**
For the Northern District of California

Later that month, two biomedical engineers from other Kaiser locations, Michael Benedetti and Phil Hunt, also reported concerns to Avila about equipment that Gutierrez had tested.  Avila Decl. ¶ 9.  At the time, Benedetti and Hunt were both traveling to different Kaiser locations, including Modesto, to service particular types of equipment.  Benedetti Decl. ¶ 7; Hunt Decl. ¶¶ 7-8.  While visiting the Modesto facility in the spring of 2009, Hunt and Benedetti discovered that Gutierrez had submitted service reports for two anesthesia machines with missing monitors.  Benedetti Decl. ¶ 13-16; Hunt Decl. ¶¶ 8-12.  Because it is impossible to service the machines properly without the monitors, Benedetti and Hunt suspected that Gutierrez had falsified the reports.  Benedetti Decl. ¶¶ 12-13; Hunt Decl. ¶¶ 10-11.  They conveyed their concerns to Avila that summer.  Benedetti Decl. ¶ 16; Hunt Decl. ¶ 11.

Avila met with Flores to discuss his concerns in June 2009 and, two days later, met with Benedetti and Hunt to discuss theirs.  Avila Decl. ¶¶ 9-10.  Another department manager, Ron Plasse, attended both meetings with Avila.  Id.; Plasse Decl. ¶¶ 5-7.  After Flores, Benedetti, and Hunt each provided substantial documentation -- including photos and hospital records -- showing that Gutierrez may have falsified service reports for certain machines, Avila contacted Kaiser's national Compliance & Risk Management (CRM) department to request an investigation into Gutierrez's work.  Avila Decl. ¶¶ 11-13; Plasse Decl. ¶¶ 7, 10, 11.

Later in June 2009, the CRM department sent one of its senior managers, Chrisoula Koutoulas, to investigate the allegations

against Gutierrez.  Koutoulas Decl. ¶¶ 5-6.  Koutoulas spoke to several of Gutierrez's coworkers at the Modesto facility, many of whom expressed doubts about his equipment-testing habits, before finally meeting with Gutierrez himself on June 26, 2009, along with his union representative and Avila.  Gutierrez Decl. ¶ 5; Avila Decl. ¶ 15; Koutoulas Decl. ¶ 14.  At that meeting, Avila notified Gutierrez that he would be placed on administrative leave.  Gutierrez Decl. ¶ 5; Avila Decl. ¶ 17; Koutoulas Decl. ¶ 15.

Soon afterwards, Koutoulas assigned Jeff Lance, an engineer from another Kaiser facility, with no knowledge of the pending CRM investigation into Gutierrez, to re-test several of the machines originally tested by Gutierrez.  Koutoulas Decl. ¶¶ 16-19; Lance Decl. ¶ 5.  Lance compared his results with Gutierrez's and found that "falsification of equipment maintenance documentation had occurred."  Lance Decl. ¶¶ 6-7; Koutoulas Decl. ¶¶ 17-18.  Based on her review of Lance's report and Gutierrez's payroll records, Koutoulas concluded that Gutierrez had falsified several hospital equipment reports as well as numerous timecard entries.  Koutoulas Decl. ¶ 20.  In early September 2009, she issued a recommendation that Gutierrez be terminated.  Id.  On September 9, 2009, Koutoulas and Avila met once again with Gutierrez, discussed their findings with him, and terminated his employment with Kaiser. Id. ¶ 21; Avila Decl. ¶¶ 19-20.

Immediately after Gutierrez was fired, his union filed a grievance challenging his dismissal.  Id. ¶ 23.  The arbitration process lasted twelve months and concluded in September 2010 when Kaiser agreed to reinstate Gutierrez and compensate him for the

United States District Court
For the Northern District of California

4

United States District Court
For the Northern District of California

year of lost wages.[1]  Id. ¶ 28.  The agreement was based, in large part, on the fact that Gutierrez was terminated with little warning despite his more than two decades of employment with Kaiser.  Avila Decl., Ex. D.  In exchange for his reinstatement and back pay award -- and as a precaution against future misconduct -- Gutierrez agreed to work in a non-lead capacity at a smaller Kaiser facility in Manteca.  Id.

Within the arbitration process, Gutierrez never alleged that he was terminated because of his age or for any other discriminatory reason.  Avila Decl. ¶ 34, Ex. D.  Gutierrez did not allege any discriminatory motives for Kaiser or Avila's actions until six months after he was fired, in March 2010, when he filed a complaint with the State's Department of Fair Employment and Housing (DFEH) alleging discrimination based on age, race, and national origin.  Boyd Decl., Ex. C.  The DFEH complaint identified October 15, 2009, as the most recent date on which Plaintiff had experienced discrimination.  Id.  Prior to that DFEH complaint, Plaintiff had not complained about any kind of discrimination at Kaiser since March 2008, when he joined co-workers in filing an internal complaint against a "racist" manager whom Kaiser subsequently fired.  Gutierrez Decl. ¶ 4.

On May 20, 2011, Gutierrez, then age fifty-two, filed a complaint in state court alleging age discrimination and various other claims against Kaiser and Avila, then age seventy-one.

---

[1] Kaiser agreed to award Gutierrez $89,024 in lost compensation, $6,600 in lost benefits, and $47,083 in lost wages for "Standby/On-call" time that he would have earned had he never been terminated.  Avila Decl., Ex. D.

Bogue Decl., Ex. D.  Kaiser and Avila subsequently removed the

action to this Court and now move for summary judgment.

LEGAL STANDARD

Summary judgment is properly granted when no genuine and

disputed issues of material fact remain, and when, viewing the

evidence most favorably to the non-moving party, the movant is

clearly entitled to prevail as a matter of law.  Fed. R. Civ. P.

56; Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986);

Eisenberg v. Ins. Co. of N. Am., 815 F.2d 1285, 1288-89 (9th Cir.

1987).

The moving party bears the burden of showing that there is no

material factual dispute.  Therefore, the court must regard as

true the opposing party's evidence, if supported by affidavits or

other evidentiary material.  Celotex, 477 U.S. at 324; Eisenberg,

815 F.2d at 1289.  The court must draw all reasonable inferences

in favor of the party against whom summary judgment is sought.

Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574,

587 (1986); Intel Corp. v. Hartford Accident & Indem. Co., 952

F.2d 1551, 1558 (9th Cir. 1991).

Material facts which would preclude entry of summary judgment

are those which, under applicable substantive law, may affect the

outcome of the case.  The substantive law will identify which

facts are material.  Anderson v. Liberty Lobby, Inc., 477 U.S.

242, 248 (1986).  Where the moving party does not bear the burden

of proof on an issue at trial, the moving party may discharge its

burden of production by either of two methods:

> The moving party may produce evidence negating
> an essential element of the nonmoving party's

> case, or, after suitable discovery, the moving
> party may show that the nonmoving party does not
> have enough evidence of an essential element of
> its claim or defense to carry its ultimate
> burden of persuasion at trial.

Nissan Fire & Marine Ins. Co., Ltd., v. Fritz Cos., Inc., 210 F.3d 1099, 1106 (9th Cir. 2000).

If the moving party discharges its burden by showing an absence of evidence to support an essential element of a claim or defense, it is not required to produce evidence showing the absence of a material fact on such issues, or to support its motion with evidence negating the non-moving party's claim.  Id.; see also Lujan v. Nat'l Wildlife Fed'n, 497 U.S. 871, 885 (1990); Bhan v. NME Hosps., Inc., 929 F.2d 1404, 1409 (9th Cir. 1991).  If the moving party shows an absence of evidence to support the non-moving party's case, the burden then shifts to the non-moving party to produce "specific evidence, through affidavits or admissible discovery material, to show that the dispute exists." Bhan, 929 F.2d at 1409.

If the moving party discharges its burden by negating an essential element of the non-moving party's claim or defense, it must produce affirmative evidence of such negation.  Nissan, 210 F.3d at 1105.  If the moving party produces such evidence, the burden then shifts to the non-moving party to produce specific evidence to show that a dispute of material fact exists.  Id.

If the moving party does not meet its initial burden of production by either method, the non-moving party is under no obligation to offer any evidence in support of its opposition. Id.  This is true even though the non-moving party bears the ultimate burden of persuasion at trial.  Id. at 1107.

United States District Court
For the Northern District of California

**United States District Court**
For the Northern District of California

DISCUSSION

Plaintiff asserts twelve causes of action in his complaint. The following discussion addresses each of these claims separately.

A.   Age Discrimination under FEHA (Plaintiff's Twelfth Cause of Action)

In McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973), and Texas Dept. of Community Affairs v. Burdine, 450 U.S. 248, 252-56 (1981), the Supreme Court outlined its burden-shifting framework for evaluating the sufficiency of a plaintiff's evidence in employment discrimination suits.  The same burden-shifting framework is used to analyze claims under FEHA.  Guz v. Bechtel Nat'l Inc., 24 Cal. 4th 317, 354 (2000); Bradley v. Harcourt, Brace & Co., 104 F.3d 267, 270 (9th Cir. 1996).

Under this framework, the plaintiff must first establish a prima facie case of discrimination.  This requires the plaintiff to show that he or she: (1) is a member of a protected class; (2) is qualified for the position he or she held or sought; (3) was subject to an adverse employment decision; and (4) was replaced by someone who was not a member of the protected class. St. Mary's Honor Center v. Hicks, 509 U.S. 502, 506 (1993) (citing McDonnell Douglas and Burdine).  Once he or she has made out a prima facie case, a presumption of discriminatory intent arises. Id.  To rebut this presumption, the defendant must come forward with a legitimate, non-discriminatory reason for the challenged employment decision.  Id. at 506-07.  If the defendant provides such a reason, the burden shifts back to the plaintiff to prove that the defendant's proffered reason is pretextual and that the

**United States District Court**
For the Northern District of California

defendant, in fact, acted with discriminatory intent.  <u>Id.</u> at 510-11.  The plaintiff can only meet this ultimate burden by producing "specific, substantial evidence of pretext."  <u>Steckl v. Motorola, Inc.</u>, 703 F.2d 392, 393 (9th Cir. 1983).  "[I]n those cases where the <u>prima facie</u> case consists of no more than the minimum necessary to create a presumption of discrimination under <u>McDonnell Douglas</u>, the plaintiff has failed to raise a triable issue of fact."  <u>Wallis v. J.R. Simplot Co.</u>, 26 F.3d 885, 890 (9th Cir. 1994).

Here, the Court will assume that Plaintiff has established a <u>prima facie</u> case of age discrimination[2] under FEHA.  Plaintiff has shown that he was over forty years old when Kaiser terminated him, was qualified to serve as Kaiser's lead biomedical engineer, and was replaced by a younger employee, Elias Flores.[3]  Gutierrez

---

[2] In his opposition brief, Plaintiff asserts that he was also subject to national origin discrimination under FEHA.  <u>See</u> Opp. 19.  However, Plaintiff did not plead a claim for national origin discrimination in his complaint.  Although Plaintiff's counsel submitted supplemental briefing after the hearing to show that Plaintiff pled national origin discrimination in its complaint, the supplemental brief merely highlights Plaintiff's other claims for FEHA harassment.  Thus, because Plaintiff has not formally asserted a claim for national origin discrimination, this order does not address the issue.  In any event, it is unlikely that Plaintiff would be able to establish a <u>prima facie</u> case for national origin discrimination anyway, given that the employee who replaced him is also of Mexican ancestry.

[3] Although Flores was over forty when he replaced Plaintiff -- and, thus, technically a member of the same suspect class -- the Ninth Circuit has recognized that this final element of the <u>prima facie</u> case "has been treated with some flexibility" in FEHA age discrimination suits.  <u>Nidds v. Schindler Elevator Corp.</u>, 113 F.3d 912, 917 (9th Cir. 1996) ("To establish a <u>prima facie</u> case of age discrimination through circumstantial evidence, the plaintiff must show that he was: (1) a member of a protected class [age 40-70] . . . and (4) replaced by a substantially younger employee with equal or inferior qualifications.").

1   Decl. ¶¶ 2-4, 18.  These facts are sufficient to meet his initial
2   burden.

3        Defendants have also met their burden by providing a
4   legitimate, non-discriminatory business reason for terminating
5   (and later demoting) Plaintiff.  Specifically, they offer
6   substantial evidence that Plaintiff neglected his duties to
7   perform required maintenance checks on hospital equipment and
8   falsified hospital records.  Flores Decl. ¶¶ 7-9; Hunt ¶¶ 7-12;
9   Lance ¶¶ 5-7; Plasse ¶¶ 9-13.  Their evidence highlights the fact
10  that Plaintiff's failure to perform his maintenance duties created
11  a potential safety hazard for Kaiser's patients.  Hunt Decl. ¶ 13;
12  Koutoulas Decl. ¶ 11.

13       Thus, to satisfy his ultimate burden, Plaintiff must provide
14  specific, substantial proof that Defendants' justification for
15  terminating and demoting him is pretextual.  He has failed to do
16  so here.  The thrust of Plaintiff's pretext evidence is a series
17  of conclusory allegations that Defendants conspired to sabotage
18  his work and "set [him] up for termination."  See Gutierrez
19  Decl. ¶¶ 4, 13-16.  Taken together, these allegations do not rise
20  to the level of "specific" or "substantial" proof required to meet
21  Plaintiff's ultimate burden of persuasion.  Steckl, 703 F.2d at
22  393.  Even if all of Plaintiff's co-workers' allegations were
23  false, there is no evidence that Kaiser's decision-makers believed
24  them to be false.  At best, Plaintiff's allegations suggest that
25  his co-workers sought to oust him from his position as lead
26  biomedical engineer for purely self-interested, rather than
27  discriminatory, reasons: namely, to obtain promotions for
28  themselves.  Id. at ¶ 18 (noting that the alleged conspirators

United States District Court
For the Northern District of California

United States District Court
For the Northern District of California

ultimately "achieved what they set out to do").  None of
Plaintiff's allegations of Defendants' supposed conspiracy even
mentions his age -- or Flores' age, for that matter -- as a
possible motivation for targeting him.  Without any specific
evidence that Defendants' actions were motivated by some
impermissible purpose, Plaintiff cannot demonstrate that
Defendants violated FEHA.  Accordingly, Defendants are entitled to
summary judgment on this claim.

> B.   Retaliation under FEHA (Plaintiff's First Cause of
>      Action)

In order to establish a <u>prima facie</u> claim of retaliation
under FEHA, the plaintiff must prove that he or she engaged in
protected activity, that the defendant-employer subjected him or
her to some adverse employment action, and that there was a causal
link between the protected activity and the adverse action.
<u>Iwekaogwu v. City of Los Angeles</u>, 75 Cal. App. 4th 803, 814
(1999).  In the absence of direct evidence, a causal link requires
showing that the defendant knew of the protected activity and that
the temporal proximity between the protected activity and the
adverse action was "very close."  <u>Clark County School Dist. v.</u>
<u>Breeden</u>, 532 U.S. 268, 273-74 (2001) (per curiam); <u>Maurey v. Univ.</u>
<u>of Southern Cal.</u>, 87 F. Supp. 2d 1021, 1033 (C.D. Cal. 1999).

Once the plaintiff has established a <u>prima facie</u> case of
retaliation, the defendant has the burden of producing a
legitimate, non-retaliatory reason for the adverse action.  <u>Scotch</u>
<u>v. Art Inst. of Cal.-Orange Cnty., Inc.</u>, 173 Cal. App. 4th 986,
1021 (2009).  If the defendant meets this burden, the plaintiff

**United States District Court**
For the Northern District of California

must then provide evidence that the defendant's proffered reason was pretextual.  Id.

Plaintiff in this case alleges that Defendants subjected him to "harassment, demotion, humiliation, unfair discipline, wrongful termination, conditional re-instatement, and constructive discharge" because he reported violations of Defendants' collective bargaining agreement.  Gutierrez Decl. ¶ 5; Compl. ¶ 20.  He also alleges that he suffered retaliation for complaining to his supervisor about an abusive manager whom he and other engineers had "accused of racism" in 2008.  Gutierrez Decl. ¶ 4; Gutierrez Dep. 77:9-:24.

Of these two bases for Defendants' alleged retaliation, only the latter potentially falls within the scope of activity protected by FEHA.  Plaintiff's complaints about possible CBA violations are not protected under FEHA since they do not address workplace discrimination.  This Court has recognized that while a plaintiff "need not have invoked 'magic words' in order for his complaints to constitute protected activity, he must have alerted his employer to his belief that discrimination, not merely unfair personnel treatment, had occurred."  Mayfield v. Sara Lee Corp., 2005 WL 88965, at *8 (N.D. Cal.) (citations omitted); see also Jurado v. Eleven-Fifty Corp., 813 F.2d 1406, 1412 (9th Cir. 1987) (finding that an employee's complaints about scheduling changes were not protected activity under Title VII).  Plaintiff's complaints about CBA violations fail this basic test.

While Plaintiff's other complaints about his manager's racist conduct do constitute protected activity, there is no evidence of a causal connection between this activity and Plaintiff's

United States District Court
For the Northern District of California

termination. Indeed, more than a full year elapsed between the time that Plaintiff complained about the manager in the spring of 2008 and the time he was placed on administrative leave in May 2009. This lengthy temporal gap between Plaintiff's initial complaint and Defendants' purported retaliation bars any inference of a causal connection between the two events. Cf. Cornwell v. Electra Cent. Credit Union, 439 F.3d 1018, 1035 (9th Cir. 2006) (finding that a seven-month gap between an employee's initial complaint and an allegedly retaliatory employment action was too great to support an inference of causation); Manatt v. Bank of Am., NA, 339 F.3d 792, 802 (9th Cir. 2003) ("While courts may infer causation based on the proximity in time between the protected action and the allegedly retaliatory employment decision, such an inference is not possible in this case because approximately nine months lapsed between the date of [plaintiff]'s complaint and the [defendant]'s alleged adverse decisions.")

Even if the Court were to assume that Plaintiff had established causation here -- and thus made out a prima facie case of retaliation -- Plaintiff's claim would still fail because he has not shown that Defendants' justifications for their actions were a pretext for retaliation. Once again, Defendants offer substantial evidence that Plaintiff was placed on administrative leave, demoted, and terminated because he failed to perform his duties and jeopardized hospital safety. To survive summary judgment, Plaintiff must offer some evidence that these justifications are merely a smokescreen for Defendants' underlying retaliatory motive. See Scotch, 173 Cal. App. 4th at 1021.

Plaintiff has not done so here.  Defendants are therefore entitled to summary judgment on this claim.

C.   Hostile Work Environment and Harassment under FEHA
     (Plaintiff's Second and Third Causes of Action)

"California courts have been guided in their interpretations of FEHA by the federal court decisions interpreting Title VII." Etter v. Veriflo, 67 Cal. App. 4th 457, 464, (1999).  Under these decisions, a plaintiff may prove harassment by demonstrating that an employer has created a hostile or abusive work environment. Meritor Savings Bank v. Vinson, 477 U.S. 57, 65-67 (1986).  This requires proof that: (1) the plaintiff was subjected to verbal or physical conduct related to his or her membership in a protected class; (2) the conduct was unwelcome; and (3) the conduct was sufficiently severe or pervasive to alter the conditions of the plaintiff's employment and create an abusive work environment. Vasquez v. County of L.A., 349 F.3d 634, 642 (9th Cir. 2003) (citing Gregory v. Widnall, 153 F.3d 1071, 1074 (9th Cir. 1998)).

Here, Plaintiff asserts separate claims for harassment and hostile work environment.  However, because courts typically treat hostile work environment as an element of harassment -- rather than as its own independent cause of action -- the Court addresses Plaintiff's harassment and hostile-work-environment claims together.

Plaintiff first alleges that he was subject to a hostile work environment because he was "unfairly criticized, harshly disciplined, intimidated, overly monitored[,] not provided adequate resources, ignored, and, [sic] refused the same opportunities as persons similarly situated not in his protected

United States District Court
For the Northern District of California

class."  Compl. ¶ 29-31.  He also asserts that Defendants

unlawfully harassed him through "excessive monitoring, false

accusations about performance and ultimate[ly] constructive

discharge."  Id. ¶ 35.

Once again, Plaintiff has failed to establish that

Defendants' conduct was motivated by Plaintiff's membership in a

protected group.  In both his declaration and his complaint, he

declines to specify which of Defendants' allegedly abusive

acts -- if any -- were motivated by race, which were motivated by

national origin, and which were motivated by age.  Cf. Rodriguez

v. John Muir Med. Ctr., 2010 WL 3448567, at *11 (N.D. Cal.)

(awarding summary judgment to defendant because plaintiff failed

to "give specific examples of discriminatory comments" to flesh

out her blanket allegations of discriminatory conduct).  The only

specific quote that Plaintiff attributes to Defendants as evidence

of harassment is a stray comment from a supervisor who once called

Plaintiff a "political guy."  Gutierrez Decl. ¶ 17.  Even if

comments like this were frequent and pervasive enough to

constitute harassment, Plaintiff provides no basis for inferring

that they were motivated by discrimination.

Plaintiff himself seems to concede that he never heard any

discriminatory or offensive comments while working for

Defendants.[4]  His Mexican-American and Latino co-workers,

---

[4] During his deposition, Plaintiff expressly stated that he
never heard anyone make a racially derogatory comment during his
employment at Kaiser.  Gutierrez Dep. 70:10-71:8.  When asked to
recall the last time he heard a manager utter an age-related
comment, he could recount just one incident from the "mid-'90s"
that he conceded was neither malicious nor inappropriate.
Id. 42:1-44:8.

**United States District Court**
For the Northern District of California

including his eventual replacement Flores, similarly assert that
they never experienced any discrimination or abuse at Kaiser.  See
Flores Decl. ¶ 17.

Plaintiff's failure to provide anything other than non-
specific allegations[5] of discrimination ultimately make it
impossible to infer that Defendants harassed him or subjected him
to a hostile work environment because of his race, national
origin, or age.  Accordingly, Defendants are entitled to summary
judgment on Plaintiff's harassment and hostile-work-environment
claims.

    D.    Retaliation under Section 1102.5 of the Labor Code
           (Plaintiff's Sixth Cause of Action)

Under section 1102.5 of the Labor Code, an "employer may not
retaliate against an employee for disclosing information to a
government or law enforcement agency, where the employee has
reasonable cause to believe that the information discloses a
violation of state or federal statute, or a violation or
noncompliance with a state or federal rule or regulation."  Cal.
Lab. Code § 1102.5(b).

To survive summary judgment on a section 1102.5(b) claim, a
plaintiff must first establish a prima facie case of retaliation,
which requires him or her to "show (1) she engaged in a protected

_____

[5] Many of Plaintiff's allegations do not even state a valid
claim for FEHA harassment because they focus on Defendants' formal
personnel decisions -- such as performance evaluations or
disciplinary actions -- rather than Defendants' unofficial
conduct.  See generally Reno v. Baird, 18 Cal. 4th 640, 646 (1998)
("Making a personnel decision is conduct of a type fundamentally
different from the type of conduct that constitutes [FEHA]
harassment. Harassment claims are based on a type of conduct that
is avoidable and unnecessary to job performance.").

activity, (2) her employer subjected her to an adverse employment action, and (3) there is a causal link between the two." <u>Patten v. Grant Joint Union High Sch. Dist.</u>, 134 Cal. App. 4th 1378, 1384 (2005).  If a plaintiff establishes a <u>prima facie</u> case, the burden shifts to the defendant to "provide a legitimate, nonretaliatory explanation for its acts."  <u>Id.</u>  If the defendant meets this burden, the plaintiff must "show this explanation is merely a pretext for the retaliation."  <u>Id.</u>

Plaintiff's § 1102.5 claim in this case is based on his allegation that Defendants retaliated against him for "complaining about discrimination and unfair and [un]equal employment treatment."  Compl. ¶ 66.  Significantly, Plaintiff concedes that the only discrimination complaints he filed with a government agency were those he submitted to DFEH in 2010.[6]  Gutierrez Dep. 137:1-:14.  Since these DFEH complaints were submitted more than five months <u>after</u> Plaintiff was terminated, Plaintiff cannot establish a causal link between his DFEH complaints and his termination.  Thus, Plaintiff cannot make out a <u>prima facie</u> case for retaliation and his section 1102.5 claim must fail. Defendants are therefore entitled to summary judgment on this claim.

  E. Wrongful Termination under the CBA and Breach of the Implied Covenant of Good Faith and Fair Dealing (Plaintiff's Eighth and Eleventh Causes of Action)

Plaintiff alleges that he was wrongfully terminated without cause and without the "benefit of progressive discipline" as

---

[6] Plaintiff also claims to have filed complaints with his union.  However, any retaliation he suffered for making those complaints would fall outside the scope of section 1102.5(b)'s coverage because Plaintiff's union is not a government agency.

**United States District Court**
For the Northern District of California

guaranteed by the CBA.  Compl. ¶¶ 80-82.  He also claims that
Defendants breached the implied covenant of good faith and fair
dealing by subjecting him to harassment and discrimination.  Id.
¶¶ 94-96.  Even assuming that Plaintiff has provided sufficient
evidence to support these allegations, these claims are preempted
by the Labor Management Relations Act (LMRA).

    The Supreme Court has recognized that, where there is a
collective bargaining agreement between an employer and a union,
state law claims requiring interpretation of that agreement are
preempted by the exclusive federal jurisdiction of the LMRA.
Allis-Chalmers Corp. v. Lueck, 471 U.S. 202, 213 (1985).
Following this rule, the Ninth Circuit has held that "section 301
[of the LMRA] preempts the California state cause of action for
breach of the implied covenant of good faith and fair dealing when
an employee enjoys . . . job security under a collective
bargaining agreement."  Milne Emp. Ass'n v. Sun Carriers, 960 F.2d
1401, 1411 (9th Cir. 1992).  Other circuits have found wrongful
termination claims to be similarly preempted.  See, e.g., Johnson
v. Anheuser Busch, Inc., 876 F.2d 620, 624 (8th Cir. 1989)
("Discharge for just cause is a subject governed by the collective
bargaining agreement.  This count is inextricably intertwined with
the collective bargaining agreement and is preempted by section
301.").

    Relying on these principles, this Court specifically held
that Plaintiff's wrongful termination and implied covenant claims
in this suit were preempted by the LMRA.  See Order Denying
Plaintiff's Motion to Remand Case to State Court, Docket No. 20
(Sept. 27, 2011).  Without repeating its analysis here, the Court

United States District Court
For the Northern District of California

adheres to its earlier reasoning and concludes that Defendants are entitled to summary judgment on these claims.

F.   Discrimination in Violation of California Public Policy and Article I, Section 8, of the State Constitution (Plaintiff's Fifth, Seventh, and Ninth Causes of Action)

Under California law, an employee may maintain a tort cause of action against his or her employer where the employer's discharge of the employee contravenes fundamental public policy. Foley v. Interactive Data Corp., 47 Cal. 3d 654, 666 (1988).  Such claims are often referred to as Tameny claims, after the decision in Tameny v. Atlantic Richfield Co., 27 Cal. 3d 167, 176-177 (1980).  These claims must be based on a policy established by a constitutional or statutory provision.  Gantt v. Sentry Ins., 1 Cal. 4th 1083, 1095 (1992).  The constitutional provision most commonly cited in this context to establish California's public policy of nondiscrimination is article I, section 8, of the State Constitution, which guarantees that no person may "be disqualified from entering or pursuing a business, profession, vocation, or employment because of sex, race, creed, color, or national or ethnic origin."  Cal. Const. art. I, § 8.

Here, Plaintiff asserts three separate but related causes of action that arise under this provision.  First, he alleges that Defendants' discriminatory conduct towards him on the basis of age and race directly violated his rights under this clause.  Compl. ¶ 87.  Second, he asserts a Tameny claim alleging that Defendants constructively discharged him in violation of the long-standing public policy against discrimination that this clause represents.

Compl. ¶¶ 72-74.  Finally, he asserts that Defendants wrongfully terminated him in violation the same broad policy.[7]

Plaintiff cannot support any of these claims for the same reasons that he cannot support any of his FEHA claims: he has not provided evidence that Defendants' conduct was motivated by his race or his age.  As explained above, Plaintiffs' evidence does not support an inference that Defendants' decision to terminate him was motivated by anything other than his own failure to perform his job duties adequately.  Defendants are therefore entitled to summary judgment on Plaintiff's constitutional claim, constructive discharge claim, and wrongful termination claim arising under article I, section 8.

G.    Intentional Infliction of Emotional Distress
       (Plaintiff's Tenth Cause of Action)

The elements of a claim for intentional infliction of emotional distress (IIED) are (1) extreme and outrageous conduct (2) intended to cause or done in reckless disregard for causing (3) severe emotional distress; and (4) actual and proximate causation.  Cervantez v. J.C. Penney Co., Inc., 24 Cal. 3d 579, 593 (1979).  The defendant's conduct must be so extreme as to "exceed all bounds of that usually tolerated in a civilized community," id., and the plaintiff's distress so severe "that no reasonable [person] in a civilized society should be expected to endure it."  Fletcher v. Western Nat'l Life Ins. Co., 10 Cal. App. 3d 376, 397 (1970).

---

[7] In addition to article I, § 8, Plaintiff points to FEHA as source of California's non-discrimination policy.  Compl. ¶¶ 51-51.

United States District Court
For the Northern District of California

**United States District Court**
For the Northern District of California

1  Here, Plaintiff asserts that Defendants' conduct towards him

2 was an "extreme and outrageous abuse of authority" and was

3 "intended to humiliate" him and force him to quit his job.  Compl.

4 ¶ 91.  He further alleges that he suffered "extreme emotional

5 distress" as a result.  Id. ¶ 92.

6  As discussed above, Plaintiff fails to point to evidence that

7 Defendants unlawfully harassed, discriminated, or retaliated

8 against him.  These same evidentiary deficiencies cause his IIED

9 claim to fail, as well, because that claim is premised on the same

10 conduct.[8]  When a plaintiff bases an IIED claim on allegations of

11 discrimination and harassment, the plaintiff's failure to provide

12 evidence supporting those underlying allegations will typically

13 doom his or her IIED claim.  See Lee v. Eden Med. Ctr., 690 F.

14 Supp. 2d 1011, 1022 (N.D. Cal. 2010) (awarding summary judgment to

15 the defendant on plaintiff's IIED claims because the plaintiff

16 failed to provide sufficient evidence to support FEHA claims of

17 harassment, discrimination, and retaliation arising from the same

18 non-outrageous conduct).  Plaintiff has not presented or even

19 alleged sufficient facts to show that Defendants' conduct was so

20 outrageous as to justify IIED liability here.  Accordingly,

21 Defendants are entitled to summary judgment on this claim.

22

23

24

25  [8] Defendants argue that Plaintiff's IIED claim is precluded by the
provisions of California's workers' compensation statute, Cal. Lab. Code
26 §§ 3200, 3602, that make workers' compensation claims the exclusive
remedy for certain tort actions against an employer.  Because
27 Plaintiff's IIED claim fails anyway here, there is no need to address
Defendants' workers' compensation argument.

28

**United States District Court**
For the Northern District of California

H.   Unfair Business Practices under the Business & Professions Code (Plaintiff's Fourth Cause of Action)

California's Unfair Competition Law (UCL) prohibits any "unlawful, unfair or fraudulent business act or practice." Cal. Bus. & Prof. Code § 17200. The UCL incorporates other business and employment-related laws and treats violations of those laws as unlawful business practices independently actionable under state law. Chabner v. United Omaha Life Ins. Co., 225 F.3d 1042, 1048 (9th Cir. 2000). Violation of almost any federal, state, or local law may serve as the basis for a UCL claim. Saunders v. Superior Court, 27 Cal. App. 4th 832, 838-39 (1994). In addition, a business practice may be "unfair or fraudulent in violation of the UCL even if the practice does not violate any law." Olszewski v. Scripps Health, 30 Cal. 4th 798, 827 (2003). To have standing to bring a UCL claim, plaintiffs must show that they "suffered an injury in fact" and "lost money or property as a result of the unfair competition." Cal. Bus. & Prof. Code § 17204. The purpose of section 17204 is to "eliminate standing for those who have not engaged in any business dealings with would-be defendants." Kwikset Corp. v. Superior Court, 51 Cal. 4th 310, 317 (2011).

In this case, Plaintiff alleges that Defendants' actions violate the UCL because they are "unfair, unlawful, harmful to the Plaintiff[,] other former and present employees, and the general public." Compl. ¶¶ 45-46. This claim appears to be based entirely on the other state law violations Plaintiff alleges in this lawsuit. Because Defendants are entitled to summary judgment on all of Plaintiff's other claims, they are also entitled to summary judgment on Defendants' UCL claim. Even if Plaintiff had provided sufficient evidence to support an independent claim under

the UCL, he could not likely establish an "injury in fact" because

he has already obtained the only remedy he seeks under the

UCL -- namely, back pay -- through the union grievance process.

<u>See</u> Avila ¶¶ 28-30.

CONCLUSION

For the reasons set forth above, Defendants' motion for

summary judgment (Docket No. 47) is GRANTED.  Plaintiff's late-

filed motion for leave to exceed the page limits during briefing

(Docket No. 63) is GRANTED.  Defendants' motion to strike

Plaintiff's request for administrative relief (Docket No. 67) is

DENIED as moot.  All of Defendants' evidentiary objections are

overruled as moot.

IT IS SO ORDERED.

Dated: 10/30/2012

CLAUDIA WILKEN
United States District Judge

**United States District Court**
For the Northern District of California